IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pocono Manor Investors, LP,        :
                  Petitioner    :
                               :
        v.               :  No. 133 M.D. 2018
                               :  ARGUED: March 13, 2019
Department of Environmental   :
Protection of the Commonwealth of  :
Pennsylvania and Environmental    :
Quality Board of the Commonwealth :
of Pennsylvania,              :
                  Respondents   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                               FILED: May 6, 2019

Respondents Department of Environmental Protection of the Commonwealth of Pennsylvania and Environmental Quality Board of the Commonwealth of Pennsylvania (DEP and EQB, individually, and Respondents, collectively) have filed Preliminary Objections to Petitioner Pocono Manor Investors, LP's (Petitioner) Amended Petition for Review (Amended Petition), through which Petitioner seeks declaratory and injunctive relief regarding the DEP and EQB's redesignation of Swiftwater Creek, which runs through Petitioner's property, as "Exceptional Value"

for purposes of water quality standards.[1] After careful review, we hold that Petitioner has neither exhausted its administrative remedies, nor pled facts in its Amended Petition that would enable it to circumvent this exhaustion requirement. Therefore, we sustain Respondents' preliminary objection as to Petitioner's failure to exhaust administrative remedies and dismiss the Amended Petition for lack of original jurisdiction.

> Petitioner
>> owns Pocono Manor Resort & Spa located at 1 Manor Drive, Pocono Manor, Pennsylvania 18349. The Pocono Manor Resort & Spa encompasses approximately 3,000 acres and is situated almost entirely within the upper portion of the Swiftwater Creek watershed. Pocono Manor Resort & Spa currently includes a hotel, conference facilities, an 18-hole golf course, and residences along with a number of other recreational amenities.

Amended Petition, ¶4.[2] According to Petitioner, the Brodhead Watershed Association filed a petition with the EQB on July 2, 2007, requesting that the Swiftwater Creek watershed be designated as Exceptional Value[3] from its source to the point at which it crosses State Route 611. *Id.*, ¶28. For unspecified reasons, the DEP did not issue a draft report based off of this request until 2015, and did not issue

---

[1] "Water quality standards consist of the combination of water uses to be protected and the stream conditions that need to be maintained or attained to prevent or eliminate pollution in order to protect the designated uses. 25 Pa. Code § 93.1." *Concerned Citizens of Chestnuthill Twp. v. Dep't of Envtl. Res.*, 632 A.2d 1, 2 n.1 (Pa. Cmwlth. 1993).

[2] As this matter comes before us on preliminary objections, "[Petitioner's] well-pled factual averments [in its Amended Petition] are [deemed] admitted; [however, Petitioner's] conclusions of law are not." *Arbor Res. LLC v. Nockamixon Twp.*, 973 A.2d 1036, 1042 n.5 (Pa. Cmwlth. 2009).

[3] Swiftwater Creek had, at that time, a designation of "High Quality," which is a designation that places fewer and less-onerous restrictions on usage of the Creek than would designation as Exceptional Value. *See* Amended Petition, ¶¶13-27.

2

its final report until February 2016. In this final report, the DEP recommended that Swiftwater Creek be designated as Exceptional Value "from its source to a location at the confluence of an unnamed tributary identified as UNT 04960[.]" *Id.*, ¶¶38-39. Respondents then undertook rulemaking efforts in 2017, based upon the final report, and issued a final rule on February 10, 2018. *See id.*, ¶¶41-48, 60. After review, the Environmental Protection Agency (EPA) then approved Swiftwater Creek's new designation on April 16, 2018, pursuant to the requirements of Section 303 of the federal Clean Water Act, 33 U.S.C. § 1313. *Id.*, ¶¶66-70.

In response to Respondents' final rule, Petitioner filed its Petition for Review with our Court on March 12, 2018, followed by the Amended Petition on May 29, 2018. Through this Amended Petition, Petitioner seeks a declaratory judgment that: 1. The redesignation of Swiftwater Creek as Exceptional Value "conflicts directly with and/or is contrary to the express provisions of other relevant statutes and regulations applicable to the industry"; 2. Respondents did not comply with the statutory and regulatory scheme for redesignating Swiftwater Creek as Exceptional Value; 3. The redesignation was not supported by "acceptable data"; 4. The "DEP's statutory and regulatory scheme of designating the water quality standards for waterways . . . violate[d] [Petitioner's] constitutional due process and equal protection rights"; 5. "The EQB failed in its statutory duty to draft and adopt the regulations, deferring entirely to [the] DEP to take full responsibility for every word in every iteration promulgated"; and 6. The rulemaking process through which Respondents designated Swiftwater Creek as Exceptional Value "[did not] comply with the Regulatory Review Act,[4] as shown in part by an inadequate Regulatory Analysis Form[.]" *Id.*, ¶93. In addition, Petitioner seeks a stay of Swiftwater Creek's

---

[4] Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1-745.12a.

3

redesignation as Exceptional Value, and injunctive relief to prevent Respondents from implementing or enforcing the redesignation, until this case has been resolved. *Id.*, ¶¶94-103.

Respondents filed Preliminary Objections to Petitioner's Amended Petition. Therein, Respondents argue the Amended Petition should be dismissed because Petitioner failed to exhaust the administrative and statutory remedies available to it under the Environmental Hearing Board Act,[5] and the Clean Streams Law,[6] which Respondents maintain are adequate to address Petitioner's concerns regarding Swiftwater Creek's redesignation. Br. in Support of Preliminary Objections at 13.

Respondents cite *Concerned Citizens* and *Rouse & Associates v. Environmental Quality Board*, 642 A.2d 642 (Pa. Cmwlth. 1994), two seminal cases in which our Court has previously addressed pre-enforcement review of the redesignation of bodies of water. Br. in Support of Preliminary Objections at 16-20. Respondents note these two cases are somewhat at odds with each other regarding whether reclassification of a water source, prior to any enforcement action, is something that can be adequately addressed at the administrative level. *Id.* Respondents contend that this matter is factually similar to *Concerned Citizens*, in which our Court found that exhaustion of administrative remedies was indeed a prerequisite for judicial review in this type of situation. *Id.* at 20-21. Respondents also maintain that the harms alleged by Petitioner are speculative, prospective, and merely relate to Petitioner's own particular interests in this one, specific instance, rather than to those of an entire industry or the regulatory scheme as a whole, such

---

[5] Act of July 13, 1988, P.L. 530, 35 P.S. §§ 7511-7516.

[6] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001.

4

that Petitioner's claims fail to justify pre-enforcement review and deprive our Court of original jurisdiction to consider the merits of the Amended Petition. *Id.* at 21-25.

By contrast, Petitioner contends that it has pled sufficient facts in its Amended Petition to establish it "will suffer actual, present harm" in the absence of pre-enforcement review, thereby establishing our Court's original jurisdiction over this matter, per *Rouse*, despite Petitioner's failure to exhaust its administrative remedies. Petitioner's Br. in Opposition to Respondents' Preliminary Objections at 1-19. In addition, Petitioner maintains that pre-enforcement review is proper because, like the petitioner in *Rouse*, it has also made constitutional challenges to Respondents' designation scheme as a whole, rather than on an as-applied basis. *Id.* at 19-20. Finally, Petitioner maintains its Amended Petition "advances the interests of an entire industry[,]" which establishes another justification for pre-enforcement review. *Id.* at 21.

"In general, a court lacks jurisdiction to address an action in law or in equity where an administrative remedy exists. . . . However, the exhaustion of administrative remedies is not required where a statutory scheme's constitutionality or validity is being challenged." *Giffin v. Chronister*, 616 A.2d 1070, 1073 (Pa. Cmwlth. 1992). Furthermore, such exhaustion is not a necessary prerequisite for obtaining judicial review if "[the challenged administrative] regulation itself causes actual, present harm" prior to its enforcement. *Concerned Citizens*, 632 A.2d at 3.

We concur with the parties that both *Concerned Citizens* and *Rouse* guide our review of this matter. In *Concerned Citizens*, the EQB redesignated a body of water known as "McMichaels Creek," upgrading its designation from High Quality to Exceptional Value. 632 A.2d at 2. Concerned Citizens of Chestnuthill Township, a local organization, then petitioned for review of this decision and requested that our

5

Court vacate the redesignation, lodging "objections to the reclassification comprising challenges to the facts and the law supporting the [re]designation, claims that the upgrade will have deleterious economic, social[,] and political effects, and allegations of procedural and notification defects in the rulemaking process which resulted in the reclassification." *Id.* The Department of Environmental Resources (DER)[7] and the EQB filed preliminary objections in response, arguing in relevant part therein that our Court did not have original jurisdiction to consider the petition for review. *Id.*

We agreed, reasoning that the redesignation *itself* of McMichaels Creek did not stand to wreak actual, direct harm upon Concerned Citizens of Chestnuthill Township, as the redesignation was not "self-executing," in that it did not directly impose affirmative duties upon the organization's members, and the DER had not theretofore taken action to enforce the redesignation. *Id.* at 3.

> The reclassification does not, for instance, make certain existing land uses impermissible, and the eventual impact of the new classification is, therefore, at this point of time, uncertain. . . . Furthermore, despite [the Concerned Citizens of Chestnuthill Township's] claim that land development will now be more costly because of the allegedly invalid [Exceptional Value] classification, if and when the first landowner is aggrieved by a DER application of the new regulation, the landowner may not only appeal to the [Environmental Hearing Board] challenging the DER action, but also may challenge the validity of the regulation itself. . . . Thereafter, if it is decided that the regulation reclassifying [McMichaels] Creek is invalid, landowners will not be obliged to undertake the more costly land use evaluation required by a conditional use designation.

---

[7] DER was the DEP's previous name. *Adams Sanitation Co. v. Pennsylvania Dep't of Envtl. Prot.*, 683 A.2d 981, 982 n.1 (Pa. Cmwlth. 1996), *aff'd on other grounds*, 715 A.2d 390 (Pa. 1998).

*Id.* at 3-4. Consequently, we held that post-enforcement review was the proper remedy under the circumstances and, in addition, that the petition for review only contained issues that were not yet ripe for our consideration. *Id.* at 4.

In *Rouse*, Rouse submitted a

> preliminary subdivision and land development plan application to develop 161 acres for multi-family residential dwellings in East Whiteland Township (the Township). The East Whiteland Township Zoning Board (zoning board) approved Rouse's application with the condition that Rouse construct a package treatment plant that discharges treated water into Valley Creek. At that time, there were already package treatment plants located on Valley Creek which discharged treated water into the waterway. Rouse had initially proposed to connect to the Township's public sewer system but agreed to construct the treatment plant in conformity with the zoning board's direction. Subsequently, three environmental groups unsuccessfully challenged the zoning board's requirement that Rouse's treatment plant discharge water into Valley Creek.

642 A.2d at 643. Thereafter, the DER began reviewing the status of Valley Creek, instigating a process which eventually led to the designation of Valley Creek as Exceptional Value. *Id.* at 643-44.

Rouse then filed a petition for review in our Court, challenging Valley Creek's new designation, to which the DER and EQB filed preliminary objections based, in part, on the argument that we did not have original jurisdiction to consider the petition for review on account of Rouse's failure to exhaust administrative remedies. *Id.* at 644. We overruled this objection for three reasons:

> First, Rouse has alleged that it will suffer actual, present harm before the enforcement of DER's designation of Valley Creek as [Exceptional Value]. In its petition for review, Rouse claims that it is immediately, directly, and actually impacted and that it will suffer a hardship for the following reasons:

7

a. Rouse would be required to spend endless amounts of time and money to prepare plans and applications and submit them for its proposed treatment plant. They would then be processed by DER when DER has already predetermined that a treatment plant with stream discharge into an [Exceptional Value] stream will cause an adverse measurable change in the existing water quality and, therefore, would not be issued a permit.

b. Rouse would be forced to await an administrative determination of its permit application before being able to obtain a judicial review of the validity of the regulation and the viability of the permit application.

c. In order to be able to apply for a sewage disposal plan permit, Rouse would have to spend tremendous sums of money for final land development plans for its proposed development because DER will not process Act 537[8] amendments or sewage disposal plant permits until final land development plans have been approved.

d. Rouse cannot proceed with its development or sell its development because of the uncertainty of the sewer proposal.

These allegations, when accepted as true, demonstrate the existence of actual, present harm.

Second, the instant matter can be distinguished from *Concerned Citizens*, because Rouse is placed in a unique position by the zoning board's refusal to allow Rouse to connect to presently operating sewage disposal units and by the zoning board's conditioning of its approval of Rouse's land use plans on Rouse's agreement to construct a sewage treatment plant. In *Concerned Citizens*, the [Concerned Citizens of Chestnuthill Township's] general claim that the redesignation of McMichaels Creek would have deleterious economic, social, and political effects is far more remote and anticipatory than Rouse's claims in

---

[8] "Act 537" is formally known as the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§ 750.1-750.20a. *Delaware Riverkeeper v. Dep't of Envtl. Prot.*, 879 A.2d 351, 353 (Pa. Cmwlth. 2005).

the present matter. The [Concerned Citizens of Chestnuthill Township] did not have any pending subdivision or land development plan, the approval of which was tied to the existence of an [Exceptional Value] stream. In the instant matter, the zoning board's requirement that Rouse construct a treatment plant that discharges into Valley Creek in order [to] realize [its] land use proposal, forces Rouse to be more immediately concerned with the water quality requirements for Valley Creek.

[Finally], Rouse's petition for review goes further than merely challenging DER's redesignation of Valley Creek. Rouse's petition for review raises constitutional due process and equal protection challenges to DER's regulatory scheme of designating the water quality standards for waterways.

*Id.* at 646-47.

Here, even assuming the truth of the Amended Petition's well-pled averments, we find that Petitioner has failed to establish that we may properly invoke our powers of original jurisdiction over this matter. In *Rouse*, the DER initiated the designation process **after** Rouse was already in the midst of developing its property. Here, the only specific project that Petitioner claims will be affected by Swiftwater Creek's redesignation is the "Pocono Springs Entertainment Village," which was announced two months **after** Respondents issued their final rule enacting the designation and five days before the EPA approved Respondents' decision. Amended Petition, ¶¶69-70, 74-85. Thus, it is Petitioner's decision to initiate development of its property while Swiftwater Creek's redesignation was still under formal consideration, rather than the redesignation itself, which stands to cause potential harm to Petitioner. Petitioner's choice to move forward with the Pocono Springs Entertainment Village project under the circumstances is not dissimilar to a pedestrian leaving the safety of the sidewalk, deliberately jumping into the rush of oncoming traffic, and then faulting the affected drivers for their inability to avoid the resultant collision. In

9

addition, Petitioner also avers that the value of its property "was immediately diminished upon publication of the redesignation of Swiftwater Creek in the Pennsylvania Bulletin on February 10, 2018." Amended Petition, ¶86. This, however, is far too conclusory and speculative a statement to establish the existence of actual, direct harm to Petitioner as a result of Swiftwater Creek's redesignation.

Furthermore, Petitioner has failed to properly plead a facial constitutional challenge to the regulatory scheme through which Respondents impose water quality standards. Indeed, in its Amended Petition, Petitioner merely alleges that Petitioner alone will be affected by Swiftwater Creek's redesignation, rather than a broader attack upon the designation process as a whole. *See, e.g., id.*, ¶¶28-40. In fact, during oral argument before this Court, the parties agreed that no other property owners along this watershed that were impacted by the redesignation sought to challenge the propriety of the redesignation. Petitioner's exclusive focus on the putative effect of Swiftwater Creek's redesignation upon Petitioner's property **alone** vitiates any argument that Petitioner seeks to address industry-wide concerns and, consequently, may obtain immediate, pre-enforcement review on that basis. *Arsenal Coal Co. v. Dep't of Envtl. Res.,* 477 A.2d 1333, 1339-40 (Pa. 1984). Thus, to the extent that Petitioner raises constitutional issues, it does so on an as-applied basis, which requires it to exhaust its administrative remedies prior to seeking judicial review. *Keystone ReLeaf LLC v. Pa. Dep't of Health*, 186 A.3d 505, 516 (Pa. Cmwlth. 2018).[9]

---

[9] In its Amended Petition, Petitioner further claims that Respondents failed to provide Petitioner with proper notice and opportunities to be heard while redesignation of Swiftwater Creek was being considered. Amended Petition, ¶93(d). However, during oral argument before this Court, Petitioner conceded that it had been fully aware of Swiftwater Creek's consideration by Respondents for redesignation and had, in fact, participated throughout the process.

Therefore, as Petitioner has neither exhausted the remedies available to it at the administrative level, nor pled facts enabling it to invoke an exception to this doctrine of exhaustion, we sustain Respondents' preliminary objection regarding Petitioner's failure to do so and dismiss the Amended Petition for lack of original jurisdiction.[10]


_____

ELLEN CEISLER, Judge

---

[10] In light of this ruling, we decline to address the remainder of the arguments raised by Respondents in their Preliminary Objection.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pocono Manor Investors, LP, : 
                      Petitioner : 
                       : 
       v. : No. 133 M.D. 2018
                       : 
Department of Environmental : 
Protection of the Commonwealth of : 
Pennsylvania and Environmental : 
Quality Board of the Commonwealth : 
of Pennsylvania, : 
                  Respondents : 

# **O R D E R**

AND NOW, this 6th day of May, 2019, upon consideration of the Department of Environmental Protection of the Commonwealth of Pennsylvania and Environmental Quality Board of the Commonwealth of Pennsylvania's (Respondents) Preliminary Objections to Pocono Manor Investors, LP's (Petitioner) Amended Petition for Review (Amended Petition), and Petitioner's response thereto, it is hereby ORDERED:

1. Respondents' preliminary objection, regarding Petitioner's failure to exhaust administrative remedies, is SUSTAINED;

2. Petitioner's Amended Petition is DISMISSED, due to lack of original jurisdiction.

 

                                                _____
                                                  ELLEN CEISLER, Judge